# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

ARMORSOURCE LLC,

    Plaintiff,

    v.

YOAV KAPAH, *et al.*,

    Defendants.

Case No. 2:18-cv-905
JUDGE GEORGE C. SMITH
Magistrate Judge Vascura

## OPINION AND ORDER

This matter is before the Court upon the motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) of Defendant Daily Services, LLC, formerly d/b/a iFORCE (Doc. 40) ("Daily Services' Motion") and Defendant Luna Kapah (Doc. 48) ("Luna's Motion"). The motions are fully briefed and ripe for disposition. For the following reasons, Daily Services' Motion is **DENIED** and Luna's Motion is **GRANTED IN PART and DENIED IN PART**.

### I. BACKGROUND

Plaintiff ArmorSource, LLC designs and manufactures ballistic helmets for use by military and law enforcement officers. (Doc. 31, Am. Compl. ¶ 1). Defendant Daily Services is a staffing agency that provided staffing services to ArmorSource during the relevant period of 2011–2017. (*Id.* ¶ 6). Daily Services submitted weekly invoices to ArmorSource, purportedly reflecting charges for services provided by Daily Services employees to ArmorSource. (*Id.* ¶¶ 52, 69, 81). ArmorSource alleges that its own President and CEO, Defendant Yoav Kapah, conspired with Daily Services to falsely invoice ArmorSource for services that were purportedly provided by

Defendants Luna Kapah (Yoav's wife) and Ramona Sockerson (Yoav's paramour). (*Id.* ¶¶ 52–62, 72–75). ArmorSource alleges that Daily Services and Defendant Chad Postell (Daily Service's Executive Vice President) prepared and submitted the false invoices, and Yoav approved payment of the invoices with ArmorSource funds, despite knowledge on the part of Yoav, Daily Services, Postell, Sockerson, and Luna that neither Sockerson nor Luna ever performed any services for ArmorSource during the relevant period. (*Id.* ¶¶ 61–65, 73–75). Daily Services then kept a portion of the Sockerson- and Luna-related payments as a kickback before forwarding the remainder to accounts belonging to Sockerson and Luna, respectively. (*Id.* ¶¶ 58, 65, 74–75).

The payments to Sockerson and Luna are just some of the embezzlement activities alleged by ArmorSource against Yoav, who is currently facing criminal charges in the Court of Common Pleas for Licking County, Ohio. This action is stayed as against Yoav pending the outcome of those criminal proceedings. (Doc. 90). Additionally, Sockerson is currently in default for failing to respond to either the original Complaint or Amended Complaint. (Docs. 55, 90). Postell filed an Answer denying the allegations against him. (Doc. 88).

Daily Services and Luna now move to dismiss the claims against them for failure to state a claim upon which relief can be granted. (Docs. 40, 48). As pertinent to the present motions, ArmorSource's Amended Complaint alleges the following claims against both Daily Services and Luna: conversion (count 1), civil theft (count 3), fraud (count 4), conspiracy (count 5), and violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO") (count 8).

## II.     STANDARD OF REVIEW

Daily Services and Luna bring these motions pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that ArmorSource has failed to state a claim upon which relief can be granted.

Under the Federal Rules, any pleading that states a claim for relief must contain a "short and plain statement of the claim" showing that the pleader is entitled to such relief. Fed. R. Civ. P. 8(a)(2). To meet this standard, a party must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A claim will be considered "plausible on its face" when a plaintiff sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 12(b)(6) allows parties to challenge the sufficiency of a complaint under the foregoing standards. In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz-Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

### III. DISCUSSION

**A. Daily Services' Motion to Dismiss**

Daily Services argues that the RICO claim against it is not viable, and, because the RICO claim is the only source of original subject-matter jurisdiction, the Court should decline to exercise

3

supplemental jurisdiction over the remaining state law claims. The Court will address each of these arguments in turn.

### 1. Participation in a RICO enterprise under § 1962(c)

RICO forbids "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a claim under this statute, a plaintiff must plead the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 791 (6th Cir. 2012) (quoting *Moon v. Harrison Piping Supply,* 465 F.3d 719, 723 (6th Cir. 2006) and *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985)). Daily Services contests the sufficiency of ArmorSource's allegations as to each of these four elements.

#### a. Conduct

To establish the conduct element, a plaintiff must allege "that the defendant conducted or participated, 'directly or indirectly, in the conduct of [the RICO] enterprise's affairs." *Ouwinga*, 694 F.3d at 791 (quoting 18 U.S.C. § 1962(c)). The Supreme Court has clarified the conduct element requires proof that the defendant participated in the "operation or management" of the enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). "RICO liability is not limited to those with primary responsibility for the enterprise's affairs; only 'some part' in directing the enterprise's affairs is required." *Ouwinga* at 172 (quoting *Reves* at 179). However, defendants must have "conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Id.* (quoting *Reves* at 185) (emphasis in original). Participation in the operation or management of the enterprise "can be accomplished either by making decisions on behalf of the

4

enterprise or by knowingly carrying them out." *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008).

Daily Services argues it cannot be found to have operated or managed the alleged enterprise because it was merely an "outsider" to Yoav's scheme without knowledge that Sockerson or Luna "was a poor performer." (Doc. 40, Mot. at 7). Its role in creating the allegedly fraudulent invoices, it contends, was merely providing a legitimate service to the enterprises created by Yoav, Sockerson, and Luna. Citing *MyFreeMedicine.com, LLC v. Alpine Inv'rs*, Daily Services argues that mere preparation of invoices for the enterprise is insufficient to constitute operation or management of the enterprise. 739 F. Supp. 2d 8 (D. Me. 2010). But *MyFreeMedicine.com* is distinguishable, because in that case, the claim at issue was against the specific Financial Controller who assembled the invoices, and the allegations suggested that other wrongdoers had manipulated the data before it reached the Controller for assembly. *Id.* at 22–23. In contrast, the claim here is against the corporate entity issuing the invoices, so that ArmorSource need not establish at this point any particular Daily Services employees who were responsible for the fraudulent entries. *See FFP Holdings, LLC v. Moeller*, No. 3:14 CV 693, 2014 WL 4322804, at *2 (N.D. Ohio Aug. 29, 2014) (conduct element satisfied where defendant company invoiced plaintiff company in furtherance of scheme to defraud plaintiff company).

Yet Daily Services cannot be held to have operated or managed the enterprise if it did not have knowledge of the fraudulent scheme. And while ArmorSource alleges that "[Daily Services] . . . knew Sockerson [and Luna were] not performing any services for ArmorSource . . ." (Doc. 31, Am. Compl. ¶¶ 61, 73), Daily Services contends this allegation is conclusory and insufficient under Fed. R. Civ. P. 9(b).

While "the circumstances constituting fraud or mistake" must be "state[d] with particularity" in a complaint alleging fraud or mistake, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Thus, ArmorSource need only meet the plausibility standard of *Iqbal* and *Twombly*, rather than the heightened particularity standard for fraudulent misrepresentations under Rule 9(b). And while ArmorSource's allegations of Daily Services' knowledge are not detailed, the Court finds them plausible considering other developed factual allegations in the Amended Complaint. Namely, ArmorSource alleges that Daily Services and Postell created the weekly invoices that were submitted to ArmorSource; that, in addition to the regular and expected breakdown of charges by employee, these invoices contained unexplained "administrative fees"; and that, when asked, Daily Services told ArmorSource that the "administration fee" was a charge for marketing and public relations services allegedly provided by Sockerson to ArmorSource. (Doc. 31, Am. Compl. ¶¶ 52–54, 65). ArmorSource also provides a sample of specific invoice dates with specific charges for "administration fees" attributable to Sockerson as well as details of a direct deposit payment from Daily Services to Luna. (*Id.* ¶¶ 57, 75).

Moreover, Daily Services does not deny that Postell, its Executive Vice President, participated in the creation of the allegedly fraudulent invoices. And while Daily Services argues that "vicarious liability is inconsistent with RICO" (Doc. 40, Mot. at 7), the case on which Daily Services relies is distinguishable. In *McFanin v. First of Mich. Corp.*, the court held that a low-level sales employee's actions could not be attributed to the corporation because the employee was not a policymaker for the company and "there is no evidence that a policy-making officer participated in, had knowledge of, influenced, or controlled any wrongdoing." Case No. K86-276B CA, 1989 U.S. Dist. LEXIS 17688, at *12 (W.D. Mich. Jan. 19, 1989). Yet Postell is alleged

6

to have been Daily Services' Executive Vice President during the relevant period, which is a position that could plausibly make him a policy-making officer. Further, *McFanin* speaks to "evidence" that a policymaker had knowledge of the wrongdoing because it was decided on summary judgment. *Id.* At the pleading stage, ArmorSource need only provide allegations sufficient to plausibly raise an inference that Daily Services participated in the enterprise's management or operation, not evidence to that effect.

Further, Daily Services broadly mischaracterizes portions of ArmorSource's allegations. In several instances, Daily Services refers to Sockerson and Luna as "poor performers," to their "poor work performance," and that ArmorSource merely felt Daily Services supplied employees who "were not worth the value that ArmorSource paid"; moreover, Daily Services contends, "[i]t is uncontested that Daily Services never directed or actively participated in the alleged enterprise or even knew of the alleged fraudulent scheme"; and that "ArmorSource never alleges Daily Services had any involvement or even knew of [the alleged kickback] scheme." (Doc. 40, Mot. at 7–8, 11).

But ArmorSource never suggests that Sockerson and Luna were legitimate employees with merely unsatisfactory performance; rather, ArmorSource's allegations are clear that Sockerson and Luna never worked for ArmorSource at all during the relevant period, and that Daily Services was aware of this fact, and yet Daily Services nevertheless invoiced ArmorSource for Sockerson's and Luna's non-existent work and pocketed a portion of the invoice payments as a kickback. (Doc. 31, Am. Compl. ¶¶ 61, 73). While knowledge might be implausible under Daily Services' version of the facts, this Court must accept the allegations in the Amended Complaint as true for purposes of this motion. Under that version of the facts, ArmorSource has sufficiently alleged that Daily Services participated in the operation or management of the alleged enterprise.

### b. Existence of an enterprise

RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To be an association-in-fact enterprise, three structural features are required: (1) a purpose, (2) relationships among those associated with enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. *Boyle v. United States*, 556 U.S. 938, 946 (2009). These requirements "are interpreted flexibly," as "members do not need to hold fixed roles, and a chain of command is not required." *Brown v. Cassens Transp. Co.*, 675 F.3d 946, 967 (6th Cir. 2012) (overruled on other grounds).

The Court has no trouble finding this element satisfied by ArmorSource's Amended Complaint. Drawing inferences from well-pleaded allegations in ArmorSource's favor, the "purpose" of the alleged RICO scheme is sufficiently clear: to extract assets from ArmorSource. *See FFP Holdings*, 2014 WL 4322804, at *7. Through the alleged kickback scheme, Daily Services funneled money to Sockerson and Luna while keeping a portion of the payments from ArmorSource for itself. The relationship between the parties is also clearly alleged: Postell and Daily Services created bogus invoices including charges for non-existent work by Sockerson and Luna; Yoav approved the bogus invoices on behalf of ArmorSource; Daily Services then kept a portion of the Sockerson- and Luna-related payments as a kickback before forwarding the remainder to accounts belonging to Sockerson and Luna, respectively. Finally, the alleged scheme lasted long enough for the RICO enterprise to pursue its purpose: ArmorSource alleges that regular payments were made for Sockerson- and Luna-related work starting, at the latest, in 2013 and continued until July 2017 when Yoav was terminated as president and CEO. (Doc. 31, Am. Compl. ¶¶ 56, 75, 84). ArmorSource alleges that it was defrauded of more than $172,000 in

Sockerson-related payments and more than $191,000 in Luna-related payments over this period. (*Id.* ¶¶ 68, 80).

Daily Services' sole argument against the existence of an enterprise appears to be that "ArmorSource does not allege Daily Services *knew* of the other Defendants outside of the employer-employee context or profited from any alleged scheme to sufficiently violate 18 U.S.C. § 1962(c)." (Doc. 40, Mot. at 10). The Court disagrees. First, Daily Services has not identified any authority for the requirement that participants of a RICO enterprise "know each other" outside of an employer-employee context. And even if such a requirement exists, ArmorSource pleaded that Sockerson and Luna never worked for ArmorSource; thus, their association with Daily Services could only have been outside the employer-employee context. Further, ArmorSource's allegations that Daily Services retained a portion of Sockerson-and Luna-related payments as a kickback establishes profit from the alleged scheme.

In sum, ArmorSource has adequately alleged the existence of a RICO enterprise.

### c. Pattern

Daily Services argues that the "pattern of racketeering activity" required by RICO requires "a systemic threat of ongoing fraud," which cannot be satisfied since the alleged fraudulent scheme is no longer ongoing. (Doc. 40, Mot. at 8 n.3). Daily Services misunderstands the requirements of the pattern element.

A pattern of racketeering activity requires, at a minimum, two acts of racketeering activity within ten years of each other. 18 U.S.C. § 1961(5). The Supreme Court has held, however, that the minimum two acts are not necessarily sufficient and that a plaintiff must show "that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 239 (1989) (emphasis in original). This requirement is known as the "relationship plus continuity" test. *Ouwinga*, 694 F.3d at 795.

Although the Supreme Court in *H.J.* spoke of a "threat of continued criminal activity," it later clarified in the same opinion that the continuity portion of the test may be satisfied by "*either* [ ] a closed period of repeated conduct, *or* [ ] past conduct that by its nature projects into the future with a threat of repetition." 492 U.S. at 241 (emphasis added). "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *Id.* at 242.

ArmorSource has satisfied this burden. As noted *supra*, the Amended Complaint alleges that Yoav, Daily Services, Postell, Sockerson, and Luna engaged in repeated fraudulent invoice and kickback activities over at least a four-year period. *See Ouwinga,* 694 F.3d at 795–96 (finding closed period continuity satisfied when defendants communicated with plaintiffs in a fraudulent manner consistently for at least five years). Thus, the fact that the kickback scheme is no longer operating is not a bar ArmorSource's RICO claim.

### d. Racketeering activity

Daily Services also briefly argues that the only conduct it is alleged to have engaged in, "invoicing ArmorSource for services Daily Services provided," is not illegal and therefore cannot constitute a predicate act of racketeering activity. But ArmorSource rightly points out that it alleges that Daily Services knowingly invoiced ArmorSource for services that *were not* provided, such that Daily Services engaged in mail, wire, and bank fraud. These types of fraud are expressly encompassed within the definition of "racketeering activity" and therefore ArmorSource has satisfied this element as well. *See* 18 U.S.C. §§ 1341, 1343, 1344, 1961(1).

In sum, the Court finds that ArmorSource has sufficiently alleged a RICO claim against Daily Services under 18 U.S.C. § 1962(c).

### 2. RICO conspiracy under § 1962(d)

Daily Services moved to address the entirety of Count 8, which encompasses both a claim for participating in a RICO enterprise in violation of 18 U.S.C. § 1962(c) (discussed *supra*) and a claim for conspiracy to violate § 1962(c), which is itself a violation of 18 U.S.C. § 1962(d). However, Daily Services did not specifically address the conspiracy allegations in its Motion. After ArmorSource pointed this out in its opposition brief, Daily Services argued on reply that because the Amended Complaint failed to state an underlying § 1962(c) claim, the conspiracy claim under § 1962(d) must also fail. (Doc. 59, Reply at 5–6). However, the Court has concluded that the § 1962(c) claim is viable, and Daily Services has not offered any other argument in support of dismissing the § 1962(d) claim. ArmorSource's conspiracy claim against Daily Services under § 1962(d) therefore stands.

### 3. State law claims

Because the parties to this action are not diverse, this Court does not have original jurisdiction over ArmorSource's state law claims. 28 U.S.C. § 1332. However, the Court may exercise supplemental jurisdiction over the state law claims because they form part of the same case or controversy as the federal RICO claim, over which the Court does have original jurisdiction. 28 U.S.C. §§ 1331, 1367(a). Daily Services' only argument for dismissal of ArmorSource's state law claims is that, because the federal RICO claims are not viable, the Court should exercise its discretion to decline supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(c)(3). However, as explained *supra*, the RICO claims against Daily Services are viable, and there is therefore no reason to decline supplemental jurisdiction over the state law claims. Because Daily Services offered no other basis for dismissing the state law claims, these claims will remain pending.

**B.    Luna' Motion to Dismiss**

Luna moves to dismiss each of the five claims against her on the merits. The Court will consider each claim in turn.

**1.    Conversion**

The elements of a conversion claim under Ohio law are: (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages. *NPF IV, Inc. v. Transitional Health Servs.*, 922 F. Supp. 77, 81 (S.D. Ohio 1996) (Graham, J.). However, a claim for conversion of money requires that the money have been "earmarked" or is specific money capable of identification, such as money in a bag. *Id.*; *RAE Assocs., Inc. v. Nexus Commc'ns, Inc.*, 36 N.E.3d 757, 765–66 (Ohio Ct. App. 2015). An obligation to merely make good a certain *sum* of money cannot form the basis of a conversion claim. *RAE Assocs.* At 765–66; *Fed. Ins. Co. v. Benchmark Bank*, No. 2:17-CV-135, 2018 WL 527285, at *10 (S.D. Ohio Jan. 24, 2018) (Smith, J.).

ArmorSource has not alleged that Luna came into possession of any specifically identifiable money; it alleges only that ArmorSource's funds were improperly deposited into her account. Accordingly, the conversion claim against Luna is **DISMISSED**.

**2.    Civil theft**

Ohio Revised Code § 2703.61 authorizes the recovery of damages from "any person . . . who commits a theft offense" by a property owner who "brings a civil action pursuant to division (A) of section 2307.60 of the Revised Code." § 2307.61(A). Section 2307.60(A) provides that "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law." *See Jacobson v. Kaforey*, 75 N.E.3d 203, 206 (Ohio 2016). ArmorSource does not specify which theft offense it contends Luna committed,

stating only that the "civil theft claim is predicated on Defendants' conversion and wrongful taking of its funds." (Doc. 68, Resp. at 8). The Court construes ArmorSource's Amended Complaint to allege an offense under Ohio Revised Code § 2913.02, titled "Theft; aggravated theft." Section 2913.02 provides:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
> (1) Without the consent of the owner or person authorized to give consent;
>
> (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
>
> (3) By deception;
>
> (4) By threat;
>
> (5) By intimidation.

Luna also does not discuss any particular theft offense, but argues she cannot have committed theft because she was never in possession of ArmorSource's property. Rather, the scheme as alleged by ArmorSource involved payments by ArmorSource to Daily Services, followed by payments by Daily Services to Luna.

Because § 2913.02 requires Luna to have "knowingly obtain[ed] or exert[ed] control over" ArmorSource's property, the Court agrees that the Amended Complaint does not sufficiently allege that Luna committed a theft offense as required by § 2703.61. ArmorSource's money was paid to Daily Services, not to Luna, even if Luna may have been an indirect beneficiary of those payments. *See State v. Metheney*, 87 Ohio App. 3d 562, 567, 622 N.E.2d 730, 733 (Ohio Ct. App. 1993) (defendant did not "obtain" electricity as required for offense under § 2913.02 because, although she used and benefited from the electricity, the bills were in the names of her husband and place of employment).

ArmorSource also argues that conversion or "wrongful taking of funds" is a sufficient basis for a claim under § 2703.61, even though conversion is a common law tort and not a criminal "theft offense." However, the case on which ArmorSource relies for this proposition does not so hold. *Cuyahoga Hts. Local Sch. Dist. v. Palazzo*, 69 N.E.3d 162, 166 (Ohio Ct. App. 2016). Rather, *Palazzo* holds only that a criminal conviction for theft was not required before a plaintiff could recover in a civil action under §§ 2703.60–61. *Id.* In any case, ArmorSource has not alleged a viable conversion claim against Luna. Accordingly, ArmorSource's claim for civil theft against Luna is **DISMISSED**.

### 3. Fraud and conspiracy

To state a claim of fraud, a plaintiff must allege: (1) a representation (or concealment of a fact when there is a duty to disclose), (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, and (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the reliance. *Volbers-Klarich v. Middletown Mgt., Inc.*, 929 N.E.2d 434, 440 (Ohio 2010).

Luna challenges the first element: ArmorSource has not alleged any misrepresentation by Luna sufficient to meet the particularity standard of Fed. R. Civ. P. 9(b). To satisfy this requirement, a plaintiff must (1) specify the allegedly fraudulent statements, (2) identify the speaker, (3) state when and where the statements were made, and (4) explain what made the statements fraudulent. *Newberry v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015) (citing *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012)).

The Court agrees that ArmorSource has not sufficiently alleged any misrepresentation by Luna. In its opposition brief, ArmorSource states only the following:

> Luna knowingly made false representations regarding purported services she provided to the benefit of ArmorSource to induce ArmorSource to pay [Daily Services] for services that were never performed by Luna. (Doc. 31 at ¶¶ 72–83). Luna also engaged in fraud against ArmorSource when she accepted the illicit funds, which she knew she had no entitlement to. (Doc. 31 at ¶ 79).

(Doc. 68, Resp. at 5–6). Yet this explanation still fails to identify any misrepresentations Luna made to ArmorSource. Further, the Amended Complaint clearly alleges that Daily Services, not Luna, submitted the invoices (containing false charges for Luna's work) to ArmorSource. (Doc. 31, Am. Compl. ¶ 81). As to Luna, the only non-conclusory factual allegations are that Daily Services deposited funds into her account. (*Id.* ¶ 75).

ArmorSource also suggests that Luna should have alerted ArmorSource when she received funds from Daily Services knowing that she was not entitled to them. While concealing facts may function as a misrepresentation in the presence of a duty to disclose, ArmorSource has not alleged the existence of any relevant duty. *State v. Warner*, 564 N.E.2d 18, 40 (Ohio 1990) ("[O]ne who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so. And the duty to disclose arises when one party has information 'that the other [party] is entitled to know *because of a fiduciary or other similar relation of trust and confidence between them*.") (quoting *Chiarella v. United States*, 445 U.S. 222, 235 (1980)) (emphasis added). ArmorSource has therefore failed to allege that Luna individually committed fraud.

However, ArmorSource has also advanced a conspiracy claim jointly against Yoav, Daily Services, Postell, and Luna. To state a claim for civil conspiracy, ArmorSource must allege (1) a malicious combination; (2) of two or more persons; (3) resulting injury to person or property; and (4) the existence of an unlawful act independent from the actual conspiracy. *Rosy Blue, NV v. Lane*, 767 F. Supp. 2d 860, 868 (S.D. Ohio 2011) (Barrett, J.) (citing *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.,* 219 F.3d 519, 534 (6th Cir. 2000)). Moreover, there are common law fraud

claims underlying the conspiracy claim still pending against the remaining alleged co-conspirators, all of whom are alleged to have had a more active role in making misrepresentations to ArmorSource than Luna. (*See* Am. Compl. ¶¶ 78 (Daily Services and Postell led the preparation and submission of the false invoices); 77 (Yoav approved the false invoices)).

Importantly, the acts of co-conspirators in furtherance of the conspiracy are attributable to each other. *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998). Thus, "[i]f [Luna, Yoav, Daily Services, and Postell] did engage in a conspiracy to defraud [ArmorSource], as [ArmorSource] alleged, then, as a consequence of the existence of the conspiracy, the finding could be upheld that [Luna] engaged in fraud against [ArmorSource]." *Id.* (citing Prosser & Keeton on Torts (5 Ed. 1984) 323, Section 46 ("All those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt the wrongdoer's act done for their benefit, are equally liable."); *see also Matthews v. New Century Mortg. Corp.*, 185 F. Supp. 2d 874, 890 (S.D. Ohio 2002) (Chatigny, J.) (in light of sufficiently-pleaded fraud claim against individual mortgage brokers, lender could be held liable for mortgage brokers' fraud if plaintiff succeeded in proving conspiracy between lender and mortgage brokers). Therefore, because the underlying fraud claims against Yoav, Postell, and Daily Services remain pending, Luna may still be liable for fraud if ArmorSource has sufficiently stated a claim for civil conspiracy against Luna, Yoav, Postell, and Daily Services.

The Court finds that ArmorSource has stated a claim for conspiracy against Luna. The Amended Complaint sufficiently pleads a malicious combination of Luna, Yoav, Postell, and Daily Services. The requirement of malicious combination to injure "does not require a showing of an express agreement between defendants, but only a common understanding or design, even if tacit,

to commit an unlawful act." *DeBoer Structures (U.S.A.) Inc. v. Shaffer Tent And Awning Co.*, 233 F. Supp. 2d 934, 945 (S.D. Ohio 2002) (Sargus, J.) (quoting *Gosden v. Louis*, 687 N.E.2d 481, 497 (Ohio Ct. App. 1996)). In proving this element, "it is sufficient that the parties in any manner come to a mutual understanding that they will accomplish the unlawful design." *Id.* (quoting *Godsen* at 497 and *Pumphrey v. Quillen,* 141 N.E.2d 675, 680 (Ohio Ct. App. 1955)). ArmorSource's allegations that Daily Services and Postell prepared the false invoices, Yoav approved the false invoices, and Daily Services and Luna received the proceeds of these false invoices are sufficient to raise an inference that these defendants came to a mutual understanding regarding the improper extraction of assets from ArmorSource.

In sum, because ArmorSource has stated a claim against Luna for conspiracy to defraud ArmorSource, and because the underlying fraud claims against her co-conspirators remain pending, neither the fraud nor conspiracy claims against Luna may be dismissed.

    **4.**    **Participation in a RICO enterprise under § 1962(c) and RICO conspiracy under § 1962(d)**

As set forth *supra*, to state a claim under this statute, a plaintiff must plead the following elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Here, ArmorSource's § 1962(c) claim fails for the same reasons that the claim for fraud against Luna would have failed but for the conspiracy claim: ArmorSource has not alleged any actions by Luna other than the receipt of funds in her bank account. While ArmorSource alleges that Luna's role in the enterprise was to "manage[ ] the receipt of the funds, completing the scheme to defraud and steal from ArmorSource" (Doc. 31, Am. Compl. ¶ 79), ArmorSource does not explain what "management of the receipt of the funds" entails or how Luna's management of funds in her own account could constitute operation or management of the enterprise. *See Ouwinga*, 694 F.3d at 172 (defendants must have "conducted or participated in the conduct of the '*enterprise's* affairs,'

not just their *own* affairs.") (quoting *Reves*, 507 U.S. at 185) (emphasis in original). In the absence of allegations that Luna participated in the operation or management of any RICO enterprise, ArmorSource cannot satisfy the conduct element of its § 1962(c) claim.

However, just as with the claims for common law fraud and conspiracy, Luna may still be liable for violating § 1962(d) for conspiring with Yoav, Postell, and Daily Services to violate § 1962(c). "Defendants' agreement to participate in the RICO conspiracy may be inferred from their acts." *United States v. Hughes*, 895 F.2d 1135, 1141 (6th Cir. 1990) (citing *United States v. Joseph,* 835 F.2d 1149, 1152 (6th Cir.1987) (inference drawn from defendant's acts is sufficient evidence of an agreement to participate in the affairs of the enterprise). Thus, to allege a claim of RICO conspiracy against Luna, ArmorSource need not prove that Luna personally took actions in furtherance of the conspiracy. *Id.*

Moreover, Luna has not advanced any arguments as to why the RICO conspiracy claim should be dismissed. Accordingly, ArmorSource's claim against Luna for RICO conspiracy under § 1962(d) stands.

### 5. Statute of limitations

Finally, Luna argues that the claims against her are barred by the four-year statute of limitations that applies both to Ohio tort claims and RICO. *Cundall v. U.S. Bank*, 909 N.E.2d 1244, 1249 (Ohio 2009) (four-year limitation period for fraud); *Bradley v. Miller*, 96 F. Supp. 3d 753, 768 (S.D. Ohio 2015) (Black, J.) (statute of limitations for a civil conspiracy claim is the same as the underlying cause of action); *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987) (Clayton Act's four-year limitation period is applicable to RICO actions). Luna argues that the only alleged specific deposit by Daily Services into Luna's bank account occurred on November 22, 2013. (Doc. 31, Am. Compl. ¶ 75). Therefore, because this action was not commenced until 2018, Luna contends ArmorSource's claims against her are untimely.

There are two problems with this argument. First, in addition to the specific November 22, 2013 deposit of $700, ArmorSource alleges that "[a]dditional payments by [Daily Services] and Postell to Luna's account were periodically made . . . beginning no later than 2011 and continuing until July 2017. The total amount of money fraudulently obtained from ArmorSource and diverted to [Daily Services] in connection with the Luna-related scheme was over $191,000." (*Id.* ¶ 81). While ArmorSource does not provide details of all the alleged deposits to Luna's account, the Court finds them sufficient to plausibly raise an inference that Luna's misconduct continued through 2017, well within the four-year limitations period.

Second, ArmorSource alleges the fraudulent Luna-related payments were not discovered until after March 2017, following the resignation of ArmorSource's former CFO, which triggered a review of ArmorSource's financial records. (*Id.* ¶¶ 26–27). The statute of limitations for a RICO claim is subject to the discovery rule, such that the limitations period does not begin to run until "a party knew, or through the exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation." *Sims v. Ohio Cas. Ins. Co.,* 151 F. App'x 433, 435 (6th Cir. 2005) (citing *Rotella v. Wood,* 528 U.S. 549, 553–55 (2000)); *see also Taylor Group v. ANR Storage Co.,* 24 F. App'x 319, 325 (6th Cir. 2001) ("The limitations period for RICO claims accrues when a plaintiff knew or should have known of an injury.") (*citing Rotella,* 528 U.S. at 554–55). The discovery rule is equally applicable to fraud claims under Ohio law. *Inv'rs REIT One v. Jacobs*, 546 N.E.2d 206, 210 (Ohio 1989).

Luna argues that ArmorSource should not receive the benefit of the discovery rule because there is no reason why ArmorSource could not have discovered the accounting irregularities that led to this action as far back as 2013. (Doc. 81, Reply at 15). However, well-pleaded allegations of delayed discovery cannot be defeated at the pleadings stage. *Fremont Reorganizing Corp. v.*

19

*Duke*, 811 F. Supp. 2d 1323, 1340 (E.D. Mich. 2011) (plaintiff's allegations that it did not discover RICO scheme until point within the limitation period was sufficient to preclude dismissal at pleadings stage on statute of limitations grounds); *State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*, No. 14-CV-10266, 2014 WL 5427170, at *7 (E.D. Mich. Oct. 24, 2014) (argument that plaintiff should have known of RICO scheme at earlier time cannot be resolved at pleadings stage). Accordingly, ArmorSource's claims against Luna are not time-barred.

## IV. CONCLUSION

For the foregoing reasons, Daily Services' Motion to Dismiss is **DENIED** and Luna Kapah's Motion to Dismiss is **GRANTED IN PART and DENIED IN PART**. ArmorSource's claims against Luna Kapah for conversion, civil theft, and participation in a RICO enterprise under 18 U.S.C. § 1962(c) are **DISMISSED**. All other claims in ArmorSource's Amended Complaint remain pending.

The Clerk shall remove Documents 40 and 48 from the Court's pending motions list.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　 */s/ George C. Smith*
　　　　　　　　　　　　　　　　　　　　**GEORGE C. SMITH, JUDGE**
　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT COURT**