# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

ARMORSOURCE, LLC,

  Plaintiff,

-vs-

YOAV KAPAH, *et al.*,

  Defendants.

:     Case No. 2:18-cv-905

:     Judge Sarah D. Morrison
       Magistrate Judge Chelsey M. Vascura

:

## OPINION AND ORDER

This matter is before the Court upon Defendant Luna Kapah's and Defendants Paul Garcia and M4 Consulting, LLC's Motions to Dismiss the Second Amended Complaint (ECF Nos. 109, 110), Plaintiff ArmorSource, LLC's Memoranda in Opposition (ECF Nos. 113, 114), and Defendants' Reply briefs (ECF Nos. 119, 121). For the reasons that follow, the Court **DENIES** Ms. Kapah's Motion and **GRANTS IN PART** and **DENIES IN PART** Mr. Garcia and M4's Motion.

## I.    FACTUAL ALLEGATIONS

ArmorSource, LLC ("Plaintiff") is an Ohio company that develops, manufactures, and supplies advanced ballistic helmets for military personnel and law enforcement (Second Amend. Compl., ¶ 1, ECF No. 94). It was founded in 2008 by Larry Dickinson and Donald Blake. (*Id.* ¶ 19). After Mr. Dickinson passed away, the Plaintiff's Board appointed Defendant Yoav Kapah as President and Chief Executive Officer ("CEO"). (*Id.* ¶¶ 21–22).

Plaintiff alleges that beginning in 2011, Mr. Kapah "engaged in massive theft and fraud" against Plaintiff in coordination and with the aid and assistance of each named Defendant in the Second Amended Complaint. (*Id.* ¶ 23). Generally, Plaintiff claims that Mr. Kapah used his

position to avoid safeguards and oversight from Plaintiff's management team, "which allowed him to seek reimbursement for personal activities and expenses unrelated to ArmorSource's business and to coordinate with the other named Defendants to steal from and defraud ArmorSource." (*Id.* ¶ 24). Plaintiff also alleges that "by falsifying invoices, receipts, and other documents, [Mr.] Kapah and the other named Defendants entered into several arrangements that had the appearance of legitimate business transactions but were actually illicit schemes to funnel money from ArmorSource to the personal accounts of [Mr.] Kapah and the other named Defendants." (*Id.* ¶ 25). Plaintiff did not begin to uncover this "enterprise to steal from and defraud" Plaintiff until March 2017. (*Id.* ¶ 26). Plaintiff terminated Mr. Kapah on July 11, 2017. (*Id.* ¶ 84).

### A. Defendant Luna Kapah

Defendant Luna Kapah is Mr. Kapah's wife. (*Id.* ¶ 3). Ms. Kapah never worked for Plaintiff; she lived outside of the United States during all times relevant to this action. (*Id.* ¶¶ 73, 79). Plaintiff alleges that Ms. Kapah made false representations to Plaintiff in order to induce Plaintiff to pay Defendant iforce, LLC,[1] a staffing agency, for services she never performed for Plaintiff. (*Id.* ¶¶ 6, 73). Plaintiff claims that between 2011 and July 2017, these "bogus payments" were made by Plaintiff to iforce who then improperly funneled Plaintiff's funds to Ms. Kapah. (*Id.* ¶ 74). According to Plaintiff, when Ms. Kapah received the payments from iforce in her bank account, she knew those payments were part of an illegitimate kickback scheme based on false statements she made. (*Id.* ¶ 79). Plaintiff alleges that the total amount of money fraudulently obtained from Plaintiff and diverted to iforce in connection with Ms. Kapah

---

[1] Defendant Daily Services, LLC was formerly doing business as "iforce." (ECF No. 120).

2

was over $191,000. (*Id.* ¶ 80).

B. **Defendants Paul Garcia and M4 Consulting, LLC**

Defendant Paul Garcia is the President and CEO of Defendant M4 Consulting, LLC ("M4"), a consulting agency that provided consulting services to Plaintiff. (*Id.* ¶¶ 4–5). Plaintiff alleges that pursuant to an April 1, 2012 consulting agreement, Plaintiff agreed to pay M4 a monthly retainer and a commission of $1.00 for each AS-104 ballistic helmet sold to the United States government and to reimburse M4 for certain expenses incurred. (*Id.* ¶¶ 111–12). Plaintiff claims that instead, Mr. Kapah, M4, and Mr. Garcia circumvented the legitimate consulting agreement and arranged for Plaintiff to pay M4 a larger retainer and a much higher commission per helmet. (*Id.* ¶ 113). According to Plaintiff, the excess payments were used by M4 to make a series of monthly kickback payments to Mr. Kapah, in excess of $133,000. (*Id.* ¶ 116). Specifically, Plaintiff alleges that between December 2015 and December 2016, M4 and Mr. Garcia issued 12 overstated invoices to Plaintiff, which were approved for payment by Mr. Kapah. (*Id.* ¶¶ 115, 117, 120; Invoices, ECF No. 110-1). Several days after each payment was received, M4 allegedly wired a portion of the excess funds to Mr. Kapah. (Second Amend. Compl., ¶¶ 116–17, 120). According to Plaintiff, M4 and Mr. Garcia knew the overpayments were illicit kickback payments to Mr. Kapah as part of an enterprise to defraud Plaintiff. (*Id.* ¶ 120). Plaintiff alleges that during Mr. Kapah's tenure as CEO, Plaintiff overpaid M4 "in an amount currently unknown but believed to exceed $1 million." (*Id.* ¶ 121).

II. **RELEVANT PROCEDURAL HISTORY**

Plaintiff filed its First Amended Complaint on November 12, 2018. (ECF No. 31). Shortly thereafter, the Court granted in part and denied in part Ms. Kapah's Motion to Dismiss the First Amended Complaint. (ECF No. 92). Specifically, the Court granted Ms. Kapah's

Motion as to Plaintiff's claims for conversion, civil theft, and Racketeer Influenced and Corrupt Organization Act ("RICO") enterprise (18 U.S.C. § 1962(c)). (*Id.*).

On March 19, 2019, Plaintiff filed its Second Amended Complaint (ECF No. 94), alleging claims relevant to Ms. Kapah, Mr. Garcia, and M4 as follows: conversion as to all Defendants except Ms. Kapah (Count I); civil theft as to all Defendants except Ms. Kapah (Count III); fraud as to all Defendants (Count IV); conspiracy as to Mr. Kapah, iforce, Chad Postell, Ramona Sockerson, and Ms. Kapah (Count V); conspiracy as to Mr. Kapah, Mr. Garcia, and M4 (Count VII); RICO as to all Defendants except Ms. Kapah[2] (Count VIII); and punitive damages as to all Defendants (Count IX).

Ms. Kapah filed a Motion to Dismiss the Second Amended Complaint on April 23, 2019. (ECF No. 109). On the same day Mr. Garcia and M4 filed a joint Motion to Dismiss the Second Amended Complaint. (ECF No. 110). Plaintiff responded to both Motions on May 14. (ECF Nos. 113, 114). Mr. Garcia and M4 filed a reply brief on May 28, followed by Ms. Kapah on May 31. (ECF Nos. 119, 121). Both Motions are now ripe for review.

### III. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

In the first part of her Motion to Dismiss, Ms. Kapah argues that because the Second Amended Complaint eliminated the federal RICO claim against her, the Court should exercise its discretion to dismiss the state law claims against her as well. Plaintiff responds that the parenthetical "Against All Defendants except Luna" underneath the RICO charge in Count VIII of the Second Amended Complaint was an inadvertent copy-and-paste error. In other words, Ms. Kapah should not have been eliminated as a named Defendant in the Second Amended Complaint under Count VIII.

---

[2] The Court addresses Plaintiff's assertion that this is a typographical error *infra*.

4

"[A]s a general rule, the Court prefers to decide a case on its merits rather than on a technicality." *Leak v. Lexington Ins. Co.*, 641 F. Supp. 2d 671, 674 (S.D. Ohio 2009); *Kowalke v. Swiss-America Trading Corp.*, No. 2:11-cv-280, 2011 WL 13130883, at *1 (S.D. Ohio Oct. 11, 2011). Although Ms. Kapah argues that the parenthetical at issue in Count VIII was "clearly and unambiguously put into the [Second Amended Complaint] by a logical and deliberate act[,]" there is no evidence to support such an assertion and Plaintiff contends otherwise. (Def. Reply, 3, ECF No. 121). More importantly, Ms. Kapah will suffer no prejudice as a result of correction of the error. As Plaintiff suggests, aside from the parenthetical, the substance of the RICO charge in the First Amended Complaint and the Second Amended Complaint are identical. Both describe Ms. Kapah's alleged involvement in the civil RICO violation. Moreover, as the Court will explain *infra*, the Court previously held that Plaintiff alleged a plausible claim for relief against Ms. Kapah on the RICO conspiracy claim, such that Ms. Kapah is not prejudiced by failing to address that claim in the second part of her Motion to Dismiss.

Accordingly, the Court will issue a notation order on the docket that the parenthetical under Count VIII of the Second Amended Complaint should read "(Against All Defendants)" so that it is clear moving forward. Such resolution negates any necessity for the Court to engage in a pendant party jurisdiction analysis. Ms. Kapah's Motion to Dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) is **DENIED**.

## IV. MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

In the second part of Ms. Kapah's Motion to Dismiss, she argues that even if the Court does have jurisdiction over the claims against her, they should be dismissed for failure to state a claim upon which relief can be granted. Mr. Garcia and M4 move to dismiss all causes of action against them on the same grounds.

A.  **Standard of Review**

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

While courts are typically limited to deciding Rule 12(b)(6) motions on the complaint, documents that are not formally incorporated by reference or attached to a complaint may also be considered part of the pleadings if the document is "referred to in the complaint and is central to the plaintiff's claim." *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (internal quotations omitted). "In such event, the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." *Id.* (internal quotations

omitted).

B.     **Defendant Luna Kapah**

1.     **Fraud, Conspiracy, and RICO**

After the First Amended Complaint was filed in this case, Ms. Kapah filed a Motion to Dismiss all claims against her pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 48). The Court performed an in-depth analysis and denied Ms. Kapah's Motion as to the fraud, conspiracy, and RICO conspiracy (18 U.S.C. § 1962(d)) claims. (ECF No. 92) As a result, the only claims alleged against Ms. Kapah in the Second Amended Complaint are fraud (Count IV), conspiracy (Count V), RICO (Count VIII), and punitive damages (Count IX). The allegations contained in the Second Amended Complaint as to the surviving claims against Ms. Kapah are identical as those contained in the First Amended Complaint. Ms. Kapah has not pointed to any intervening change in the law or clear legal error that would warrant reconsideration of the Court's previous Opinion. *See League of Women Voters of Ohio v. Blackwell*, 432 F. Supp. 2d 734, 738 (N.D. Ohio 2006), *rev'd in part on other grounds*, 548 F.3d 463 (6th Cir. 2008) ("[A] motion to dismiss an amended complaint is no more than a motion for reconsideration to the extent it simply restates arguments already considered and rejected with respect to the original complaint.").

Accordingly, the Court **DENIES** Ms. Kapah's Motion to Dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) as to the fraud (Count IV), conspiracy (Count V), and RICO conspiracy (Count VIII) claims. To the extent Plaintiff is attempting to resurrect the RICO enterprise claim against Ms. Kapah, that part of Count VIII is dismissed for the reasons stated in the Court's March 11, 2019 Opinion.

## 2. Punitive Damages

Moving to Plaintiff's cause of action for punitive damages (Count IX), which she did not raise in her previous Motion to Dismiss, Ms. Kapah argues that it must be dismissed because it is not a claim, but a request for relief. While Ohio does not allow a civil action maintained solely for punitive damages, "a request for punitive damages—even if listed as a separate cause of action in a complaint—is permitted under Ohio law if it is derivative of, or sufficiently tied to, another cause of action that allows for punitive damages as relief." *McIntire v. Baxter Int'l, Inc.*, No. 2:16-cv-185, 2017 WL 1078599, at *6 (S.D. Ohio Mar. 21, 2017). Ms. Kapah acknowledges that the punitive damages claim sufficiently derives from, and is tied to, the fraud and conspiracy claims against her. (Def. Motion, 14–15, ECF No. 109). As explained above, Plaintiff has pleaded sufficient factual allegations to pursue damages under those claims.

Accordingly, Ms. Kapah's Motion to Dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) is **DENIED** as to the punitive damages (Count IX) claim.

### C. Defendants Paul Garcia and M4 Consulting, LLC

#### 1. Conversion

Defendants argue that Plaintiff's conversion claim fails because it does not allege that Mr. Garcia and M4 came into possession of any specifically identifiable money. The Court agrees.

The elements of a conversion claim under Ohio law are: "(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *NPF IV, Inc. v. Transitional Health Servs.*, 922 F. Supp. 77, 81 (S.D. Ohio 1996). However, a claim for conversion of money requires that the money has been "earmarked" or is specific money

capable of identification, such as money in a bag. *Id*; *RAE Assocs., Inc. v. Nexus Commc'ns, Inc.*, 36 N.E.3d 757, 765–66 (Ohio 10th Dist. Ct. App. 2015). An obligation to merely make good a certain *sum* of money cannot form the basis of a conversion claim. *RAE Assocs.,* 36 N.E.3d at 765–66; *Fed. Ins. Co. v. Benchmark Bank*, No. 2:17-CV-135, 2018 WL 527285, at *10 (S.D. Ohio Jan. 24, 2018).

Plaintiff has not alleged that Defendants came into possession of any specifically identifiable money; it alleges only that Plaintiff's funds were improperly used to pay M4's overstated invoices. Accordingly, the conversion claims (Count I) against Mr. Garcia and M4 are **DISMISSED**.

### 2. Civil Theft

Defendants argue that Plaintiff's civil theft claim fails because it is time-barred by the statute of limitations, Plaintiff does not allege that Mr. Garcia was overpaid any money, and the M4 invoices did not contain any alleged deception. The Court need not address any of these arguments because the claim fails for a much simpler reason.

Ohio Revised Code § 2307.61 authorizes the recovery of damages from "any person . . . who commits a theft offense" by a property owner who "brings a civil action pursuant to division (A) of section 2307.60 of the Revised Code." § 2307.61(A). Section 2307.60(A) provides that "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law." *See Jacobson v. Kaforey*, 75 N.E.3d 203, 206 (Ohio 2016). Here, Plaintiff does not specify which theft offense it contends Defendants committed, but states only that the civil theft claim is predicated on "Defendants' conversion and wrongful taking of ArmorSource funds." (Second Amend. Compl., ¶ 133). As just discussed, Plaintiff has not alleged a viable conversion (or "wrongful

9

taking of funds") claim against either Mr. Garcia or M4. Accordingly, Plaintiff's claims for civil theft (Count III) against Mr. Garcia and M4 are **DISMISSED.**

### 3. Fraud

Defendants argue that Plaintiff's fraud claim against them fails because it lacks any specifically alleged misrepresentation by Defendants or plausibly alleged justifiable reliance by Plaintiff. The Court disagrees as to both points of contention.

To state a claim of fraud, a plaintiff must allege: "(1) a representation (or concealment of a fact when there is a duty to disclose) (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, and (4) with intent to mislead another into relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the reliance." *Volbers- Klarich v. Middletown Mgt., Inc.*, 929 N.E.2d 434, 440 (Ohio 2010). "Under federal pleading standards, the complaint 'must state with particularity the false statement of fact made by the defendant which the plaintiff relied on and the facts showing plaintiff's reliance on defendant's false statement of fact." *Windsor-Laurelwood Ctr. Behavioral Medicine v. Waller Lansden Dortch & Davis*, No. 1:13CV00098, 2015 WL 1859005, at *5 (N.D. Ohio April. 22, 2015) (quoting *Blount Fin. Serv., Inc. v. Walter E. Heller and Co.*, 819 F.2d 151, 152–53 (6th Cir. 1987)).

The Second Amended Complaint provides that on 12 different occasions between December 23, 2015 and December 1, 2016, M4 and Mr. Garcia knowingly "led the issuance of" invoices to Plaintiff, which included an inflated retainer fee and overstated commissions. (¶¶ 116–17, 120). The invoices attached to Defendants' Motion to Dismiss illustrate that the bills were printed on M4 letterhead and included a specific "Remit payment to: Paul A.

Garcia." (*See generally* ECF No. 110-1). The Second Amended Complaint also lists the amount on each invoice that was allegedly misrepresented as the true amount Plaintiff owed to M4 for its services and the amount of each payment that was then allocated to Mr. Kapah as a kickback. (¶¶ 117, 120) Defendants' disagreement with Plaintiff about what the numbers in the invoices actually represent is irrelevant at this stage in the litigation. The Court is required to take the well-pleaded factual allegations in the Second Amended Complaint as true. The factual allegations at paragraphs 109 to 123 place M4 and Mr. Garcia on "sufficient notice of the misrepresentation" (i.e., the amount Plaintiff owed to M4) such that it can answer the fraud claim "in an informed way." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161 (6th Cir. 1993) (internal quotations omitted). That is all that is required by Fed. R. Civ. P. 9(b).

Similarly, the Court does not agree that because Plaintiff cited the April 2012 consulting agreement as outlining the applicable terms of the relationship between Plaintiff and M4 that it was unjustifiable to rely on the "patently inconsistent" M4 invoices thereafter. (Defs. Motion, 13, ECF No. 110). Plaintiff alleges that it relied on the overstated invoices from Defendants as accurate reflections of the terms of the agreement because they were approved by Mr. Kapah, Plaintiff's former CEO, and Plaintiff had a long-standing relationship with M4. Prior to 2017, Plaintiff had no reason to doubt M4's veracity in submitting proper invoices or Mr. Kapah's veracity in approving them on Plaintiff's behalf. Plaintiff has also sufficiently pled the justifiable reliance element of its fraud claim against Defendants.

Accordingly, Defendants' Motion to Dismiss the fraud claims (Count IV) against both Defendants is **DENIED**.

### 4. Conspiracy

Defendants argue that Plaintiff's civil conspiracy claim fails for the same reasons as

the underlying conversion, civil theft, and fraud claims. The Court has already concluded that Plaintiff sufficiently pled its fraud claims against Mr. Garcia and M4. Plaintiff has also adequately pled the other three elements of a civil conspiracy claim against Defendants.

Plaintiff has advanced a conspiracy claim jointly against Mr. Kapah, Mr. Garcia, and M4. To state a claim for civil conspiracy, ArmorSource must allege (1) a malicious combination; (2) of two or more persons; (3) resulting injury to person or property; and (4) the existence of an unlawful act independent from the actual conspiracy. *Rosy Blue, NV v. Lane*, 767 F. Supp. 2d 860, 868 (S.D. Ohio 2011) (citing *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.,* 219 F.3d 519, 534 (6th Cir. 2000)).

The requirement of malicious combination to injure "does not require a showing of an express agreement between defendants, but only a common understanding or design, even if tacit, to commit an unlawful act." *DeBoer Structures (U.S.A.) Inc. v. Shaffer Tent and Awning Co.*, 233 F. Supp. 2d 934, 945 (S.D. Ohio 2002) (internal quotations omitted). "In proving this element, it is sufficient that the parties in any manner come to a mutual understanding that they will accomplish the unlawful design." *Id.* (internal quotations omitted). Plaintiff's allegations that Mr. Garcia and M4 issued the overstated invoices, Mr. Kapah approved the overstated invoices, and all three received financial benefit from the overstated invoices at the expense of Plaintiff is sufficient to raise an inference that Defendants came to a mutual understanding regarding the improper extraction of funds from Plaintiff. As previously discussed, there are common law fraud claims underlying the conspiracy claim pending against Mr. Kapah, [3] Mr. Garcia, and M4.

---

[3] Although a Notice of Consent Judgment was filed on May 28, 2019 by Plaintiff and Mr. Kapah, it was never signed by the Court. Thus, the claims against Mr. Kapah are still pending. This will be addressed in a forthcoming order.

Accordingly, Defendants' Motion to Dismiss the civil conspiracy claims (Count VII) is **DENIED.**

### 4. RICO

RICO forbids "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a claim under this statute, a plaintiff must plead the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 791 (6th Cir. 2012) (internal quotations omitted). Here, Defendants only challenge elements three and four.

#### a. Pattern

Defendants argue that Plaintiff has not alleged "long-term criminal conduct" over a "substantial period of time" thus, failing to meet the continuity requirement. (Defs. Motion, 16, ECF No. 110). Plaintiff responds that it has alleged both close-ended and open-ended continuity with regards to M4 and Mr. Garcia. The Court agrees with Plaintiff as to the latter.

A pattern of racketeering activity requires, at a minimum, two acts of racketeering activity within ten years of each other. 18 U.S.C. § 1961(5). The Supreme Court has held, however, that the minimum two acts are not necessarily sufficient and that a plaintiff must show "that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 239 (1989) (emphasis in original). This requirement is known as the "relationship plus continuity" test. *Ouwinga*, 694 F.3d at 795. Although the Supreme Court in *H.J. Inc.* spoke of a "threat

of continued criminal activity," it later clarified in the same opinion that the continuity portion of the test may be satisfied by "*either* [ ] a closed period of repeated conduct, *or* [ ] past conduct that by its nature projects into the future with a threat of repetition." 492 U.S. at 239, 241 (emphasis added). In other words, "[t]he continuity prong of the test can be satisfied by showing either a 'close-ended' pattern (a series of related predicate acts extending over a substantial period of time) or an 'open-ended' pattern (a set of predicate acts that poses a threat of continuing criminal conduct extending beyond the period within which the predicate acts were performed)." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 409 (6th Cir. 2012).

> The Sixth Circuit explained:
>
> [o]ften a RICO action will be brought before continuity can be established [by showing predicate acts spanning a substantial period of time]. In such cases, liability depends on whether the threat of continuity is demonstrated. So the plaintiff[] must plausibly allege that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed. Determining whether the predicate acts establish open-ended continuity requires a court to examine the specific facts of the case. The threat of continuing racketeering activity need not be established, however, exclusively by reference to the predicate acts alone; rather, a court should consider the totality of the circumstances surrounding the commission of those acts.

*Id.* at 410 (internal quotations and citations omitted). Moreover, "[s]ubsequent events are irrelevant to the continuity determination . . . because . . . the threat of continuity must be viewed at the time the racketeering activity occurred." *Id.* (internal quotations omitted).

Here, Plaintiff alleges that from at least December 2015 through December 2016, Defendants sent monthly overstated invoices to Plaintiff, which were approved by Mr. Kapah, resulting in kickback payments from M4 to Mr. Kapah. This was not an "inherently terminable scheme" with a "built-in ending point" but rather one that likely would have continued into the future had Plaintiff not begun catching on to Mr. Kapah's illicit schemes in March 2017,

ultimately leading to his termination in July. *Id*; *see also Blue Cross and Blue Shield of Michigan v. Kamin*, 876 F.2d 543, 545 (6th Cir. 1989) (finding that continuity was established because, if the defendant had not been caught, there was no reason to believe he would have stopped submitting fraudulent insurance claims). Further, "facts external to the predicate acts may, and indeed should, be considered." *United States v. Busacca*, 936 F.2d 232, 238 (6th Cir. 1991). Plaintiff also alleges that Mr. Kapah engaged in a similar kickback scheme with Daily Services, Mr. Postell, Ms. Sockerson, and Ms. Kapah for at least four years between March 2013 and July 2017. *See H.J. Inc.,* 492 U.S. at 242 ("[T]he threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business.").

Given the full scope of the allegations against Mr. Kapah, including that he regularly used his position as CEO to avoid safeguards and oversight from Plaintiff's management team to further his own personal financial gain at the expense of Plaintiff (Second Amend Compl., ¶ 24), the Court cannot conclude that the parties intended the kickback scheme to last for only a finite period of time. There is no indication that at the time of the predicate acts alleged, Defendants' pattern of behavior would not have continued indefinitely into the future. *Busacca*, 936 F.2d at 237–38 (finding that there was an "implicit threat of continuity" where the defendant "demonstrated his complete ability to control the dispensation of monies . . . while doggedly pursuing and establishing his scheme" even where there were only six predicate acts committed in a span of two-and-a-half months). Moreover, Plaintiff's allegation that 2016 was the only period of time "for which bank statements were available in Kapah's computer" suggests that Plaintiff does not yet know the extent of Defendants' alleged predicate acts—specifically those that may have occurred between January 2017 and July 2017, bolstering the open-ended

continuity argument. (*See also* Second Amend. Compl., ¶ 121, alleging that "M4 was overpaid by ArmorSource in an amount currently unknown but believed to exceed $1 million"). Thus, based on the totality of the circumstances alleged in the Second Amended Complaint, Plaintiff has sufficiently alleged a pattern of racketeering activity under the open-ended continuity theory.

b. **Racketeering Activity**

Defendants also argue that Plaintiff's RICO claim fails to adequately plead the necessary predicate acts of racketeering activity. Plaintiff responds that it has alleged numerous instances of mail and wire fraud, which both constitute predicate acts under the RICO statute. The Court agrees.

The acts that constitute predicate offenses for a RICO claim are located at 18 U.S.C. § 1961. That statute includes, among other crimes, mail fraud and wire fraud. *See id.* §§ 1341, 1343, 1961(1). "Mail fraud consists of (1) a scheme to defraud, and (2) use of the mails in furtherance of the scheme." *Heinrich*, 668 F.3d at 404 (internal quotations omitted). "The elements of wire fraud are essentially the same except that one must use the wires in furtherance of the scheme to defraud." *Id.* "A scheme to defraud includes any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money." *Id.* A plaintiff must satisfy the heightened pleading standard under Fed. R. Civ. P. 9(b) and show "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* at 405 (internal quotations omitted).

Plaintiff alleges that Mr. Garcia and M4 utilized the United States Postal Service to mail 12 invoices to Plaintiff, reflecting overstated (i.e., false) commissions and retainer fees, which were approved by Mr. Kapah, triggering 12 unauthorized payments from Plaintiff's bank accounts to M4. (Second Amend. Compl., ¶¶ 113–121, 159(e)). Mr. Garcia and M4 then

16

wired a portion of those 12 overpayments to Mr. Kapah's personal account, depriving Plaintiff of that money—approximately $133,000.00 (*Id*. ¶¶ 116–17, 120). Paragraph 117 of the Second Amended Complaint delineates the dates that the inflated invoices were received by Plaintiff from Defendants, the amount of the invoices, the dates the associated kickback payments were wired to Mr. Kapah, and the amount of the wires. *Bird v. Delacruz*, No. 04-CV-661, 2005 WL 1625303, at *6 (S.D. Ohio July 6, 2005) (holding that in order to state a valid mail or wire fraud claim as a predicate act under RICO, "the plaintiff must, within reason, describe the time, place, and content of the mail and wire communications, and it must identify the parties to these communications" (internal quotations omitted)); *FFL Holdings, LLC v. Moeller*, No. 3:14CV693V, 2014 WL 4322804, at *6 (N.D. Ohio Aug. 29, 2014) (explaining that sufficiently pled predicate acts include the "who, what, when, where" of the specific false statements or misrepresentations that drove the scheme). The Court finds that Plaintiff sufficiently alleged multiple acts of both mail fraud and wire fraud, satisfying the racketeering element of its RICO claims against Defendants.

### c. RICO Conspiracy under § 1962(d)

Plaintiff's RICO claim encompasses both a claim for participating in a RICO enterprise in violation of 18 U.S.C. § 1962(c) (discussed *supra*) and a claim for conspiracy to violate § 1962(c), which is itself a violation of 18 U.S.C. § 1962(d). Since the Court has found that Plaintiff sufficiently stated a RICO enterprise claim against Mr. Garcia and M4, the RICO conspiracy claim can also move forward. *See Pethel v. Wash. Cty. Sheriff's Office*, No. 2:06-cv-799, 2007 WL 2359765, at *14 (S.D. Ohio Aug. 16, 2007).

Defendants' Motion to Dismiss the RICO claims (Count VIII) is **DENIED**.

### 6. Punitive Damages

Finally, Defendants argues that no claim for punitive damages can stand without a viable substantive claim. As discussed, Plaintiff's claims for fraud and conspiracy survive Defendants' Motion to Dismiss. Accordingly, Defendants' Motion to Dismiss the punitive damages claim (Count IV) is **DENIED** for the reasons stated above in Section IV.B.2.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant Luna Kapah's Motion to Dismiss (ECF No. 109). To the extent Plaintiff is attempting to allege a RICO enterprise claim under 18 U.S.C. § 1962(c) against Ms. Kapah in the Second Amended Complaint, that part of Count VIII is dismissed. The Court **GRANTS IN PART** and **DENIES IN PART** Defendants Paul Garcia and M4 Consulting, LLC's Motion to Dismiss (ECF No. 110).

The Court will issue a notation order on the docket that the parenthetical "Against All Defendants except Luna" on page 26 of the Second Amended Complaint (ECF No. 94) under Count VIII is corrected to "(Against All Defendants)."

**IT IS SO ORDERED.**

    /s/ Sarah D. Morrison
SARAH D. MORRISON
UNITED STATES DISTRICT JUDGE